UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:17-CV-00443-JHM

STEVE SISSON                                            PLAINTIFF

v.

PARKS AT VINE, LLC                                 DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant Parks at Vine, LLC's ("Parks") motion to dismiss. (DN 15.) Fully briefed, this matter is ripe for decision. For the following reasons, the motion is **DENIED**.

## I. BACKGROUND

According to the complaint, Parks is a recently-developed apartment complex in Hardin County, Kentucky. (Pl.'s Compl. [DN 1-3] ¶ 4.) Plaintiff Steve Sisson agreed to serve as an "initial representative" of Parks. (*Id.* ¶¶ 3–4.) Parks sought out Sisson due to his positive relationship with the United States Department of Housing and Urban Development ("HUD") and his knowledge and experienced in dealing with HUD, since Parks was seeking HUD financing for the project. (*Id.* ¶¶ 3–4, 8.) Over the course of his involvement with the development of Parks, Sisson entered into three agreements.

First, Sisson entered into an "Operating Agreement" on May 27, 2011, with Acme Development, LLC, ("Acme") and Aspen Ventures, LLC ("Aspen"). (*Id.* ¶ 4–5; Operating Agreement [DN 1-3] at 9–25.) This agreement named Sisson as an initial representative of Parks, as well as making him a member of the newly-formed Parks at Vine, LLC. (Operating Agreement [DN 1-3] at 14, 25.)

Second, Sisson entered into an "Advisory Board Agreement" on May 31, 2011, with Parks. (Pl.'s Compl. [DN 1-3] ¶ 7; Board Agreement [DN 1-3] at 27–30.) This agreement set forth Sisson's rights and responsibilities as initial representative, which included interacting, communicating, and otherwise dealing with HUD to obtain financing for the project. (Pl.'s Compl. [DN 1-3] ¶ 7–8.) It set out the terms of compensation for Sisson, as well as the procedure for termination. Specifically, the Advisory Board Agreement states that upon the final closing of the HUD financing, the parties will "act in good faith to terminate any and all of the Initial Representative[']s responsibilities hereunder as soon as reasonably practicable." (*Id.* ¶ 9.) If the initial representative's "obligations have not be[en] terminated within 30 days of the Final Closing or 90% physical occupancy, which comes later, [Parks] shall pay the Initial Representative $5,000 for every month thereafter that the Initial Representative's obligations have not been so terminated." (*Id.* ¶ 10.)

Third, Sisson entered into a "First Amended Operating Agreement" on May 1, 2013, with Acme and Aspen. (*Id.* ¶ 14; First Amended Operating Agreement [DN 1-3] at 32–54.) As relevant to Sisson's claim, the agreement states that a "member" of Parks may resign or withdraw from the LLC only with the consent of the Manager of Parks, Deutsche Bank Berkshire Mortgage, HUD, and the holders of a majority of the membership units in Park. (Pl.'s Compl. [DN 1-3] ¶ 15.)

Sisson successfully obtained HUD financing for the project, and final closing on the financing occurred on March 19, 2013. (*Id.* ¶ 11–12.) However, Parks did not take action within 30 days of final closing to terminate Sisson's responsibilities as initial representative, despite the project being at 90% occupancy. (*Id.* ¶ 13.) On July 22, 2016, HUD gave its consent to Sisson's withdrawal as a member of Parks. (*Id.* ¶ 16.)

Sisson filed this action in Hardin Circuit Court on June 27, 2017, bringing a single claim of breach of contract against Parks. (*Id.* ¶ 24.) Sisson alleges that he is owed the $5,000 monthly payment stated in the Advisory Board Agreement for every month following the March 2013 closing until June 2016, when HUD gave its consent to his withdrawal as a member of Parks. (*Id.* ¶ 24.) Parks removed to this Court (DN 1) and has now moved to dismiss the complaint. (DN 15.)

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiffs," *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), "accept all well-pled factual allegations as true," *id.*, and determine whether the "complaint . . . states a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint falls short if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id*. at 678–79. Instead, a complaint "must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id*. at 677 (quoting Fed. R. Civ. P. 8(a)(2)). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

3

not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

While the Court will allow Sisson's claim to proceed, it is appropriate to first discuss the allegations in the complaint that do not state a claim for relief. Sisson's complaint addresses the requirements in the First Amended Operating Agreement for the resignation or withdrawal of a "member" of Parks, which include obtaining the consent of HUD. Sisson appears to allege that his responsibilities as initial representative were not terminated, within the meaning of the Advisory Board Agreement, until his withdrawal as a member of Parks was complete in June 2016. But this is not a plausible interpretation of the two documents. There is nothing in the complaint or the three agreements, which were attached to the complaint when it was filed in state court, indicating that Sisson's role as initial representative was in any way connected to his membership in the LLC. This is demonstrated by the roles being defined in different documents: the Advisory Board Agreement governed his responsibilities, compensation, and termination as an initial representative, while the Operating Agreements governed his role as a member of the LLC. Thus, the allegations pertaining to the Operating Agreements and Sisson's withdrawal as a member of the LLC are not relevant to his claim that Parks breached the Advisory Board Agreement. *See generally James River Ins. Co. v. Bates Contracting & Constr., Inc.*, 2015 WL 1197532, at *3 (Ky. Ct. App. Mar. 13, 2015) ("We interpret a contract by solely looking to the four corners of the agreement . . . without resort to extrinsic evidence") (quotations and citations omitted).

However, even if the Court disregards these allegations, Sisson has stated a claim against Parks for breach of the Advisory Board Agreement. "Under Kentucky law, a cause of action for

breach of contract must state the contract, the breach and the facts which show the loss or damage by reason of the breach." *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 724 (W.D. Ky. 2013) (quotations and citations omitted). Sisson's complaint alleges that the Advisory Board Agreement required Parks to "act in good faith to terminate any and all of the Initial Representative[']s responsibilities . . . as soon as reasonably practicable," and that "if for whatever reason the Initial Representative's obligations have not be[en] terminated within 30 days of Final Closing or 90% physical occupancy . . . the Company shall pay the Initial Representative $5,000 for every month thereafter that the Initial Representative's obligations have not been so terminated." (Pl.'s Compl. [DN 1-3] ¶¶ 9–10.) He also alleges that his responsibilities as initial representative were not terminated within 30 days of final closing. (*Id.* ¶ 13.) As a result, he is owed $5,000 for every month in which Parks failed to terminate his responsibilities, and Parks has failed to make these payments. (*Id.* ¶ 17–18.) These facts plausibly allege the existence of the contract, the manner in which it was breached, and his damages. As such, Sisson has stated a claim for breach of contract.

Parks argues that Sisson has failed to state a claim since the complaint does not allege that he continued to perform his obligations as initial representative in the months following the final closing. It argues that no duties remained for Sisson as initial representative after he obtained HUD financing; as such, there were no obligations for it to terminate, and Sisson could not have continued to act as an initial representative, even if it did not terminate his obligations. However, the Advisory Board Agreement lists the duties of the initial representative as "interact[ing], communicat[ing], and otherwise deal[ing] with HUD to obtain the HUD Financing and *contribute to the project's viability.*" (Advisory Board Agreement [DN 1-3] at 27) (emphasis added). At this stage, the Court cannot accept Parks' assertion that Sisson had *no*

remaining obligations as initial representative once HUD financing was secured. Discovery may reveal that Sisson had no remaining obligations after he secured the financing, but the complaint sufficiently alleges that obligations did remain that would require termination under the terms of the Advisory Board Agreement. As such, Sisson has plausibly alleged a claim for breach of contract, and his claim may proceed.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion to dismiss by defendant Parks at Vine, LLC (DN 15) is **DENIED**.

*[Signature]*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 31, 2018

cc: counsel of record